IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA L. SELZER, | ) | CASE NO. 1:16 CV 276 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Victoria L. Selzer, for disability insurance benefits and supplemental security income.[2]  The Commissioner has answered[3] and filed the transcript of the administrative record.[4]  Under my initial[5] and

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Benita Y. Pearson by non-document order dated February 5, 2016.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF #11.

[5] ECF # 6.

procedural[6] orders the parties have briefed their positions.[7] and filed supplemental charts[8] and the fact sheet.[9]   After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument and, therefore, the telephonic oral argument was cancelled.

**A.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Selzer who was 46 years old at the time of the administrative hearing,[10] graduated from high school and completed some online college classes.[11]  She lives with her mother[12] and her past relevant employment includes work as a spot welder, machine operator, utility line leader, and quality control inspector.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Selzer had severe impairments consisting of chronic obstructive pulmonary disease (COPD), obesity, degenerative disc disease of the lumbar

---

[6] ECF # 12.

[7] ECF # 16 (Selzer's brief), ECF #23(Commissioner's brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 16-2 (Selzer's charts).

[9]  ECF #  16-1.

[10] ECF # 11, Transcript ("Tr.") at 46.

[11] *Id*.

[12] *Id*.

[13] ECF # 16-1.

spine, right knee meniscus tear and degenerative joint disease, hypertension (HTN), major

depressive disorder, and anxiety (20 CFR 404.1520(c) and 416.920(c)).[14]

The ALJ made the following finding regarding Selzer's residual functional capacity:

The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) and meaning the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours out of 8 hours and sit for 6 hours out of 8 hours with a sit-stand option every hour for 5 minutes but would not have to leave the work station; occasionally climb stairs and ramps, but no ladders, ropes, or scaffolds; frequently balance, occasionally stoop, kneel, crouch and crawl; can reach all directions, can handle, finger, and feel; should not be exposed to extreme temperatures, wetness, humidity, pulmonary irritants, or hazards; can perform simple, routine tasks, with short simple instructions, and make simple decisions, have few work place changes, and have superficial interaction with coworkers, supervisors, and the public.[15]

Given that residual functional capacity, the ALJ found Selzer incapable of performing

her past relevant work as a machine operator, utility line leader, quality control inspector.[16]

Applying the medical-vocational grids in Appendix 2 of the regulations, the ALJ found

Selzer not under a disability.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[14] Tr. at 28.

[15] *Id.* at 31.

[16] *Id.* at 34.

[17] *Id.* at 34-35.

determined that a significant number of jobs existed locally and nationally that Selzer could perform. The ALJ, therefore, found Selzer not under a disability.[18]

## B.    Issues on judicial review

Selzer asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Selzer presents the following issues for judicial review:[19]

- Whether the ALJ erred in failing to include limitations on pace and production standards where she gave considerable weight to the State agency opinion evidence which documented such limitations, she did not give any reason for rejecting such limitations, and the limitations are supported by the record as a whole.

- Whether the ALJ's finding at Step 5 of the sequential evaluation is supported by substantial evidence where:

  - The vocational expert testified the job of "cleaner" could not be performed by someone limited to all exposure to pulmonary irritants;

  - The vocational expert testified the three jobs identified were the only jobs he could identify and the ALJ believed the jobs were "representative" and;

  - The vocational expert could not/would not address the number of part-time jobs available.

The Court recommends that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[18] *Id*. at 36.

[19] ECF # 16, at 1.

# Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.      Application of Standards**

This matter essentially presents two issues, both of which can be resolved without an oral argument.

The first issue, at Step Four, concerns the absence of limitations on pace and the lack of production quotas in the RFC, despite the fact that the functional opinions of the state agency consulting examiners included such limitations. The ALJ assigned considerable weight to the opinions of the state agency psychological reviewing consultants, and yet gave no reasons why these specific limitations from these consultants were not included in the RFC.   For the reasons that follow, I will recommend finding that substantial evidence does support the ALJ's decision in this regard.

At Step Five, the ALJ found that a substantial number of jobs existed for an individual with the RFC as adopted. Yet, the Vocational Expert (VE) identified only three jobs in response to the hypothetical that incorporated the RFC. For the reasons that follow, I will recommend finding that substantial evidence does support the ALJ's decision in this regard.

For the foregoing reasons, I will finally recommend that the decision of the Commissioner be affirmed.

*1.      Step Four*

As noted above, the ALJ assigned considerable weight to the functional limitation opinions of Irma Johnston, Psy. D., and Cynthia Waggoner, Psy.D., who are state agency

psychological consultants.[23]  The ALJ expressly noted, *inter alia*, that Dr. Johnson found that Selzer has moderate difficulties in maintaining concentration, persistence, or pace, and that Dr. Waggoner affirmed Dr. Johnston's opinions.[24]  In doing so, she further observed both consultants have special expertise in evaluating psychological impairments, and in the disability listings.[25]  Moreover, she observed on the record that both Dr. Johnston and Dr. Waggoner "provided opinions that are consistent with the record as a whole and are not contradicted by any treating source."[26]

But, despite assigning such weight to these opinions, the ALJ fashioned an RFC that Selzer, citing *Ealy v. Commissioner of Social Security,[27]* maintains should have included restrictions concerning strict production quotas and fast pace articulated in the reviewing source opinions.[28]

In that regard, the RFC does limit Selzer to "simple, routine tasks, with simple instructions," and further restricts her to tasks where she would "make simple decisions, have few workplace changes, and have superficial interaction with coworkers, supervisors and the

---

[23] Tr. at 33.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

[28] ECF # 16 at 6.

public."[29]  Plainly, and consistent with *Ealy*, even these restrictions to simple tasks and superficial interaction with others do not, of themselves, speak to issues involving the volume of work (production quotas) or the pace of work that Selzer could perform.

But, I also observe, although not mentioned by the ALJ, that Dr. Johnston noted that Selzer's mental functioning was within normal limits; that she had no residual effects from a prior stroke; and that the severity of Selzer's allegations of disability was not fully supported by the record, the examinations in the file, or by Selzer's own activities of daily living[30] - an opinion which was affirmed by Dr. Waggoner.[31]  Further, although Dr. Johnston did generally opine that Selzer had sustained concentration and persistence limitations, she also specifically described Selzer's ability to maintain attention and concentration for an extended period as only "moderately limited," and her ability to keep to a regular schedule and to sustain an ordinary routine as "not significantly limited."[32]  Her ability to perform at a consistent pace was, once again, deemed only moderately limited.[33]

Thus, even a strict reading of the relevant opinion does not seem to show that the ALJ was blatantly ignoring serious or marked limitations in the areas of concentration, persistence or pace.  Rather, at best, the opinion evidence is that Selzer was found to be moderately

---

[29] Tr. at 31.

[30] Tr. at 103.

[31] *Id*. at 119-20.

[32] *Id*. at 101.

[33] *Id*. at 102.

-8-

limited in aspects of these areas, and not significantly limited as to sustaining a normal work routine.

That said, and as it was explained by Magistrate Judge Limbert in a Report and Recommendation that was adopted by Judge Gwin in *Simmons v. Colvin*,[34] even if the consulting reviewer opinions had contained more definite and restrictive language in this area, it would not have been error for the ALJ to omit such limitations from the RFC or to fail to explain the reasons for doing so.

> Further, and even if it were a definitive limitation, the ALJ did not commit legal error by failing to address it or by failing to incorporate it into her mental RFC for plaintiff despite giving "significant weight" to those opinions. In determining a claimant's RFC, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527 (e)(2)(i). While and ALJ must consider and weigh these opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x 194, 198 (6th Cir. 2004). "Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction [s]he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11CV2104, 2013 WL 1150133 (N.D. Ohio, Mar.19, 2013); see also *Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527, at *15 (N.D. Ohio 2013) and White v. Comm'r of Soc. Sec., ---- F. Supp. 2d ----, No. 5:12CV1637, 2013 WL 4817673, at #16 (N.D. Ohio 2013).[35]

---

[34] *Simmons v. Colvin*, No.1:12CV2550, 2014 WL 977756 (N.D. Ohio March 12, 2014).

[35] *Id*. at *11.

Indeed, as Magistrate Judge Vecchiarelli explained in *Smith v. Colvin*:[36]

> State agency medical and psychological consultants are "highly
> qualified physicians, psychologists, and other medical
> specialists who are also experts in Social Security disability
> evaluation." 20 C.F.R. § 404.1527. Administrative law judges
> are not bound by any findings made by State agency medical or
> psychological consultants. *Id.* Furthermore, there is no
> requirement that an ALJ accept every facet of an opinion to
> which he assigns significant or substantial weight. Rather, the
> relevant regulations require only that an ALJ explain the general
> weight given to the opinions of nonexamining physicians. See
> 20 C.F.R. § 404.1527 (e)(2)(ii). ("Unless a treating source's
> opinion is given controlling weight, the administrative law judge
> must explain in the decision the weight given to the opinions of
> a State agency . . . psychological consultant . . .). [37]

Accordingly, and for the reasons stated above, I recommend finding that the decision
by the ALJ in this case to fashion the RFC as she did was supported by the law and
substantial evidence.

**2.** *Step Five*

The issue here, as described above, is a relatively narrow challenge to the finding that
a significant number of jobs in three categories - houskeeper/cleaner, parking lot attendant
and courier clerk - existed in the local and national economy for someone meeting the RFC
in this case.[38]

---

[36] *Smith v. Colvin*, No. 3:13CV776, 2013 WL 6504681 (N.D. Ohio Dec. 11, 2013).

[37] *Id.* at * 11.

[38] *See*, tr. at 36.

-10-

Selzer contends first that any housekeeper/cleaner jobs would be unavailable to her because the RFC states that she should not be exposed to pulmonary irritants, such as dust.[39] Further she argues that because the VE could not testify as to how many of the jobs identified were part-time, it was error to conclude that all the jobs identified are actually full time work.[40]

As the Commissioner points out, the regulations neither state nor imply that the VE is restricted to testifying only as to the availability of full-time work. As was discussed by Judge Polster in *Gadke v. Commissioner of Social Security*,[41] the fact that no government data contains such distinctions, and the regulations do not require such specificity from the VE, a VE will be permitted to testify as to the number of jobs a claimant can perform without specifically identifying the percentage of those jobs that are part-time.[42] Further, as Judge Polster observes, although the Sixth Circuit itself has not spoken on the issue, the overwhelming majority of district courts within the Circuit that have considered the question have held that an ALJ may rely on a VE's testimony about existing jobs without requiring that the testimony include a breakdown as to what percentage of jobs are part-time.[43]

---

[39] ECF # 16 at 8 (citing tr. at 31).

[40] *Id*. at 8-9.

[41] *Gadke v. Comm'r of Soc. Sec*., No. 1:12CV2875, 2013 WL 5428727 (N.D. Ohio Sept. 26 2013).

[42] *Id*. at *3 (citing *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009)).

[43] *Id*. (citing cases).

Furthermore, even if the housekeeper/cleaning jobs were not considered, the other two categories of jobs contained 6,000 jobs within the region and nearly 310,000 jobs nationally.[44]  As such, any error in including housekeeper/cleaner would be harmless, since the resulting numbers adequately set forth a significant number of jobs that the claimant could perform under the RFC.

## Conclusion

Therefore, for the reasons stated above, I recommend finding that the decision of the Commissioner in this case is supported by substantial evidence, and so should be affirmed.

Dated: December 20, 2016                              s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[45]

---

[44] *See*, tr. at 36.

[45] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-12-